```
                                          P-Send
                                          Ent
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

O

| | | |
|---|---|---|
| DONNA J. STALLING, | ) | No. EDCV 05-0610-RC |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Donna J. Stalling filed a complaint on July 15, 2005, seeking review of the Commissioner's decision denying her application for disability benefits. The Commissioner answered the complaint on December 12, 2005, and the parties filed a joint stipulation on March 13, 2006.

//
//
//

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Commissioner of the Social Security Administration, is substituted as the defendant.

**BACKGROUND**

**I**

On March 8, 2002, plaintiff applied for disability benefits under the Supplemental Security Income program of Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1382(a), claiming an inability to work since February 1, 1999, due to depression and diabetes. Certified Administrative Record ("A.R.") 13, 52-54, 63. The plaintiff's application was initially denied on May 10, 2002, and denied again on December 31, 2003, following reconsideration. A.R. 24-27, 30-35. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Joseph Schloss ("the ALJ") on December 16, 2004. A.R. 36, 394-419. On April 7, 2005, the ALJ issued a decision finding plaintiff is not disabled. A.R. 9-21. The plaintiff appealed this decision to the Appeals Council, which denied review on May 18, 2005. A.R. 5-8.[2]

**II**

The plaintiff, who was born on March 10, 1965, is currently 41 years old. A.R. 52, 397. She has an eleventh-grade education and has not worked in the last 15 years, if at all. A.R. 64, 69, 397-98, 400.

Between January 10, 2000, and October 9, 2003, plaintiff received mental health treatment at the San Bernardino County Department of Behavioral Health ("SBC Dept."), where she was prescribed various medications and group therapy. A.R. 106-70. On September 30, 2000,

---

[2] Although the plaintiff has both physical and mental complaints, plaintiff disputes only the ALJ's assessment of her mental complaints.

2

plaintiff was diagnosed with severe recurrent major depressive disorder and her Global Assessment of Functioning ("GAF") was determined to be 45.[3]  A.R. 159.  On February 7, 2001, Michael Oliver, a licensed clinical social worker, diagnosed plaintiff with recurrent moderate major depression, determined her GAF to be 50, and opined plaintiff had a "moderate" dysfunction rating due to depression, a history of drug use, and because she "can't work" and her children were taken away from her.  A.R. 152-56.  Also on February 7, 2001, Jesse Devera, M.D., diagnosed plaintiff with recurrent moderate major depression and prescribed medication to her.  A.R. 150.

On May 9, 2002, Kenneth D. Michael, M.D., a nonexamining psychiatrist, diagnosed plaintiff as having major depression, with no psychosis, and opined plaintiff has "mild" restriction in her activities of daily living, "mild-to-moderate" difficulties maintaining social functioning, "moderate" difficulties maintaining concentration, persistence or pace, and there was "insufficient evidence" to ascertain whether plaintiff experienced any episodes of decompensation.  A.R. 236-49.  Dr. Michael further opined plaintiff is "moderately" limited in her ability to understand, remember, and carry out detailed instructions and to interact appropriately with the general public, but is otherwise not significantly limited.  A.R. 250-53.

---

[3] A GAF of 45-50 means that the plaintiff exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

1    Between May 21 and May 30, 2003, plaintiff was involuntarily
2 hospitalized at Community Hospital of San Bernardino ("SB Hospital"),
3 based on her suicidal ideations.  A.R. 255-87.  She was diagnosed with
4 a schizoaffective disorder, depression, and a past history of
5 polychemical dependency, and she was determined to have a GAF of 25[4]
6 upon admission and a GAF of 60 upon discharge.[5]  A.R. 255-58.

8    On January 26, 2004, plaintiff was initially examined at the
9 Riverside County Department of Mental Health ("RCDMH"), where she was
10 diagnosed with a schizoaffective disorder, bipolar type, and began
11 treatment.  A.R. 328.  On March 16, 2004, plaintiff was involuntarily
12 hospitalized at San Gorgino Memorial Hospital with suicidal ideations,
13 after holding a knife to her throat.  A.R. 330-38.  She was
14 transferred to Riverside County Regional Medical Center ("Medical
15 Center"), where she remained involuntarily confined until March 22,
16 2004.  Id.  Upon admission to the Medical Center, plaintiff was
17 diagnosed with a schizoaffective disorder and her GAF was determined
18 //
19 //

---

[4] A GAF of 25 means that the plaintiff's "[b]ehavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

[5] A GAF of 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  Id.

4

to be 40.[6]  A.R. 339-84, 363.  Plaintiff was treated with medication, and when she was discharged, her GAF was determined to be 65.[7]  A.R. 339-40.  On March 23, 2004, plaintiff was again examined at RCDMH, where she was diagnosed with recurrent moderate major depression and an unspecified psychotic disorder, and her GAF was determined to be 50.  A.R. 322-27.

On January 13, 2005, Robin Rhodes-Campbell, Ph.D., a licensed clinical psychologist, examined plaintiff and conducted psychological testing on her.  A.R. 385-93.  Dr. Rhodes-Campbell diagnosed plaintiff with a schizoaffective disorder, by history, determined her GAF to be 65, and concluded plaintiff was malingering.  Specifically, Dr. Rhodes-Campbell found plaintiff gave a poor effort on testing, the Minnesota Multiphasic Personality Inventory was invalid, showing a "strong possibility" plaintiff was exaggerating or feigning psychological symptoms, the test of memory malingering showed plaintiff is likely malingering memory deficits, and the Miller

---

[6] A GAF of 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

[7] A GAF of 65 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

5

Forensic Assessment of Symptoms Test indicated plaintiff was malingering psychiatric symptoms. A.R. 388-89. Dr. Rhodes-Campbell concluded plaintiff should have no impairment in understanding, remembering, and carrying out short and simple or detailed instructions, making judgments on simple work-related decisions, or relating appropriately to the public, supervisors and co-workers, but her ability to withstand the stress and changes associated with an 8-hour workday and day-to-day work activities is moderately impaired. A.R. 389-93.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006); Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

6

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. § 416.920(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 416.920(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. § 416.920(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(g).

Where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments. Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. § 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering

four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. § 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in described in [§ 416.920a(c)(3)]." 20 C.F.R. § 416.920a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. (Step One). The ALJ then found plaintiff has diabetes and back pain from mild degenerative disc disease, which are considered to be severe impairments; however, plaintiff does not have a severe mental impairment.[8] (Step Two). The ALJ then found plaintiff does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff has no past relevant work. (Step Four). Finally, the ALJ determined plaintiff is able to perform a significant

---

[8] In reaching this conclusion, the ALJ did not rate plaintiff's degree of functional loss in the four areas of function, as he is required to do. 20 C.F.R. § 416.920a(c)(2-4); Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000).

8

number of jobs in the national economy, including work as a table worker, small parts assembler, and hand packager; therefore, she is not disabled.  (Step Five).

**IV**

The Step Two inquiry is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290; Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).  Including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987).  However, an overly stringent application of the severity requirement violates the Act by denying benefits to claimants who do meet the statutory definition of disabled. Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities. Webb, 433 F.3d at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also 20 C.F.R. § 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing,

1  sitting, lifting, pushing, pulling, reaching, carrying or handling, as
2  well as the capacity for seeing, hearing and speaking, understanding,
3  carrying out, and remembering simple instructions, use of judgment,
4  responding appropriately to supervision, co-workers and usual work
5  situations, and dealing with changes in a routine work setting.  20
6  C.F.R. § 416.921(b); Webb, 433 F.3d at 686.  If the claimant meets her
7  burden of demonstrating she suffers from an impairment that affects
8  her ability to perform basic work activities, "the ALJ *must* find that
9  the impairment is 'severe' and move to the next step in the SSA's
10 five-step process."  Edlund v. Massanari, 253 F.3d 1152, 1160 (9th
11 Cir. 2001) (emphasis in original); Webb, 433 F.3d at 686.
12
13      In Step Two, the ALJ found plaintiff does not have a severe
14 mental impairment, and she is not significantly limited in her ability
15 to understand, remember and carry out simple instructions, respond
16 appropriately to supervisors, co-workers, and the usual work
17 situations, and to deal with changes in a routine work setting.  A.R.
18 19.  However, the plaintiff contends these findings are not supported
19 by substantial evidence.  The plaintiff is correct.
20
21      The medical opinions of treating physicians are entitled to
22 special weight because the treating physician "is employed to cure and
23 has a greater opportunity to know and observe the patient as an
24 individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987);
25 Edlund, 253 F.3d at 1157; see also 20 C.F.R. § 416.927(d)(2)
26 (generally providing more weight is given to treating sources "since
27 these sources are likely to be the medical professionals most able to
28 provide a detailed, longitudinal picture of your medical

1  impairment(s). . . ."). Therefore, the ALJ must provide clear and
2  convincing reasons for rejecting the uncontroverted opinion of a
3  treating physician, Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.
4  2005); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003), and
5  "[e]ven if [a] treating doctor's opinion is contradicted by another
6  doctor, the ALJ may not reject this opinion without providing
7  'specific and legitimate reasons' supported by substantial evidence in
8  the record." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998);
9  Bayliss, 427 F.3d at 1216; Thomas v. Barnhart, 278 F.3d 947, 957 (9th
10 Cir. 2002).

12 Likewise, the ALJ "must provide 'clear and convincing' reasons
13 for rejecting the uncontradicted opinion of an examining physician[,]"
14 Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), and "[e]ven if
15 contradicted by another doctor, the opinion of an examining doctor can
16 be rejected only for specific and legitimate reasons that are
17 supported by substantial evidence in the record." Regennitter v.
18 Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999)
19 1298-99; Widmark, 454 F.3d at 1066. On the other hand, the ALJ "may
20 reject the opinion of a nonexamining physician by reference to
21 specific evidence in the medical record." Sousa v. Callahan, 143 F.3d
22 1240, 1244 (9th Cir. 1998).

24 Here, as set forth in Part II above, all of plaintiff's treating
25 physicians have **diagnosed** plaintiff as having either major depression
26 or a schizoaffective disorder, or both. Furthermore, plaintiff's
27 mental condition is severe enough to require treatment with
28 medication, and as early as January 10, 2000, plaintiff's treating

11

physicians began prescribing various psychiatric medications for her. See, e.g., A.R. 106-70. Moreover, during her three years of mental health treatment at SBC Dept., plaintiff's treatment team determined she had a GAF of 45 in September 30, 2000, and a GAF of 50 on February 7, 2001.[9] A.R. 15, 152, 159. Similarly, when plaintiff was discharged from SB Hospital on May 30, 2003, her treating physician there, John J. Kohut, M.D., determined plaintiff's GAF was 60. A.R. 15-16, 255-58.

A GAF score reflects "the clinician's judgment of the individual's overall level of functioning" regarding psychological, social and occupational functioning (not considering physical or environmental limitations). American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. (Text Revision) 2000); Langley v. Barnhart, 373 F.3d 1116, 1122-23 n.3 (10th Cir. 2004). As noted above, a GAF of 45-50 means the individual exhibits "[s]erious symptoms (e.g., suicidal ideation, severe

---

[9] Although the medical record dated September 30, 2000, labeled "Diagnosis," is unsigned, A.R. 159, plaintiff's treatment predating September 30, 2000, was provided by Gurmit Sekhon, M.D., who prescribed various psychiatric medications to plaintiff. A.R. 160-70. Therefore, it is reasonable to ascribe the document dated September 30, 2000, to Dr. Sekhon. The February 7, 2001, medical records also include a diagnosis by Michael Oliver, LCSW, A.R. 152, and a treatment note from Jesse Devera, M.D., affirming the diagnosis of recurrent moderate major depression. A.R. 150. Under these circumstances, the Court treats the GAF score of February 7, 2001, as part of Dr. Devera's opinion. See, e.g., Gomez v. Chater, 74 F.3d 967, 971 (9th Cir.) (holding opinion of nurse practitioner who consulted with, and was acting under supervision of, treating physician, was properly considered part of treating physician's opinion), cert. denied, 519 U.S. 881 (1996).

obsessional rituals, frequent shoplifting) or serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)[,]" and a GAF of 60 indicates the individual exhibits "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000). Although an ALJ need not discuss a GAF score in all instances, Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002), the ALJ must do so where, as here, he has not provided any rationale for otherwise rejecting the treating physicians' opinions of a claimant's overall mental functioning, and such opinions – as expressed in GAF scores – clearly contradict the ALJ's findings regarding the claimant's mental functioning. See, e.g., McCloud v. Barnhart, 166 Fed. Appx. 410, 418 (11th Cir. 2006) (per curiam) (Unpublished) ("We are unable to determine from the record what weight the ALJ placed on the GAF score of 45; therefore, we reject the Commissioner's argument that any error was harmless. With the knowledge that a GAF score of 45 reflects severe impairments, the ALJ should determine what, if any, weight to place on the score."); Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. 2004)(Unpublished) ("A GAF score of 50 or less . . . does suggest an inability to keep a job. In a case like this one, decided at step two, the GAF score should not have been ignored." (citation omitted)); Chester v. Apfel, 182 F.3d 931, 1999 WL 360176, *4 (10th Cir. (Okla.)) (Unpublished) (remanding "[b]ecause the ALJ's discussion of Dr. McCarthy's opinion does not mention the GAF score of thirty, which does indicate a severe

13

impairment," and requiring Commissioner, on remand, "to reconsider the evidence of claimant's mental impairments and to include an evaluation and discussion of Dr. McCarthy's GAF score"); Colon v. Barnhart, 424 F. Supp. 2d 805, 813 (E.D. Pa. 2006) (holding "the ALJ was required to discuss his reasons for not even considering the two GAF scores of 50, leading up to the disability determination in this case[,]" and remanding the matter for further consideration of this evidence); Samuel v. Barnhart, 295 F. Supp. 2d 926, 951 & n.15 (E.D. Wis. 2003) (examining physicians' opinions show claimant "had a severe impairment" when physicians opined plaintiff had GAF between 51-60, which meant claimant's "symptoms were moderate, and that he would have moderate difficulty in social, occupational or school functioning" and further concluding that although "the caselaw does not require ALJs to base their findings on GAF scores[,] . . . an examining physician's assessment of the claimant's ability to function cannot be ignored, particularly at step two" (citation omitted)); Bennett v. Barnhart, 264 F. Supp. 2d 238, 255 (W.D. Pa. 2003) (Contrary to ALJ's Step Two determination that plaintiff does not have a severe mental impairment, "a GAF score of 55 to 60 suggests . . . a mental impairment that is 'severe' in nature."). For these reasons, the ALJ's failure to properly consider the opinions of plaintiff's treating physicians constitutes legal error,[10] and the ALJ's Step Two determination that

---

[10] Similarly, the ALJ failed to properly consider the opinions of examining physician Dr. Rhodes-Campbell, who opined plaintiff has a "moderate" impairment in her ability to respond appropriately to work pressures and changes in a routine work setting, A.R. 392, and nonexamining physician Dr. Michael, who opined plaintiff would have "mild-to-moderate" difficulties maintaining social functioning, and "moderate" difficulties in maintaining concentration, persistence, or pace. Bustamante v.

plaintiff does not have a severe mental impairment is not supported by substantial evidence.

## V

When the ALJ's decision is not supported by substantial evidence, the Court has authority to affirm, modify, or reverse the decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Here, since the ALJ erred in determining at Step Two that plaintiff does not have a severe mental

---

Massanari, 262 F.3d 949, 955 (9th Cir. 2001); Edlund, 253 F.3d at 1159-60; see also Bennett, 264 F. Supp. 2d at 255 ("A 'moderate' limitation . . . , under the Commissioner's regulations, would suggest a mental impairment that is 'severe' in nature.").  These opinions, too, are not consistent with a finding that plaintiff's mental impairment is not severe.  Nevertheless, the Commissioner contends the ALJ's error regarding Dr. Michael's opinion was harmless because the ALJ incorporated Dr. Michael's assessment into the hypothetical question posed to the vocational expert.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").  The Court disagrees.  Since the ALJ failed to follow the proper technique in evaluating plaintiff's mental impairment – i.e., rating the degree of functional loss with regard to plaintiff's activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation before determining whether plaintiff has a severe mental impairment – this Court cannot determine the ALJ's error was harmless.  Gutierrez, 199 F.3d at 1050-51; see also Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005) (per curiam) ("The ALJ failed to even analyze or document [claimant's] condition in two of the . . . functional areas: social functioning and prior episodes of decompensation.  Because the ALJ's decision lacks consideration of these factors and their impact on his ultimate conclusion as to [claimant's] RFC, we cannot even evaluate the Commissioner's contention that the ALJ's error was harmless.").

impairment, remand is the appropriate remedy.  <u>Edlund</u>, 253 F.3d at 1160; <u>Montijo v. Sec'y of Health & Human Serv.</u>, 729 F.2d 599, 602 (9th Cir. 1983) (per curiam).

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is granted; and (2) the ALJ's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion and Order, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

DATE:   March 7, 2007                /s/ Rosalyn M. Chapman
                                                  ROSALYN M. CHAPMAN
                                     UNITED STATES MAGISTRATE JUDGE

R&R-MDO\05-0610.MDO
3/7/07